AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

## For The District of Columbia

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **GLORIA GONZALEZ PAZ** | CASE NUMBER: |
| DOB: X/X/XXXX | |

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about January 18, 2007 through February 2, 2007, in the District of Columbia, and elsewhere the defendant did, (Track Statutory Language of Offense)

knowing conspire to transfer an identification document, authentication feature, or false identification document knowing that such document or feature was stolen or produced without lawful authority.

in violation of Title __18__ United States Code, Section(s) 1028(a)(2) and (f).

I further state that I am Sean T. Ryan, Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Sean T. Ryan, Special Agent
Federal Bureau of Investigation

AUSA, Susan B. Menzer   (202) 514-6968
Sworn to before me and subscribed in my presence,

_____                at      Washington, D.C._____
Date                                                                        City and State

_____        _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
# AND ARREST WARRANTS

I, SEAN T. RYAN (hereinafter "affiant"), a Special Agent with the Federal Bureau of Investigation (hereinafter "FBI"), having been duly sworn, hereby depose and state as follows:

A. OBJECTIVE

1. Based on the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that Patricia Elizabeth Gonzalez and Gloria Gonzalez Paz conspired with others to knowingly transfer identification documents, authentication features, and false identification documents, to wit, District of Columbia driver's licenses, knowing that such driver's licenses were produced without lawful authority, in violation of 18 U.S.C. Section 1028(a)(2)and(f).

B. CREDENTIALS

1. Affiant is a FBI Special Agent assigned to the Public Corruption Squad of the Washington, D.C., Field Office. Affiant has been a FBI Special Agent for approximately four years. My duties include, but are not limited to, the investigation of alleged violations of Federal criminal statutes which involve corruption matters with public officials in the D.C. Metropolitan Area and the preparation, presentation and service of criminal complaints, arrest and search warrants. Affiant is a federal law enforcement officer under applicable provisions of the United States Code and under Rule 41(a) of the Federal Rules of Criminal Procedure.

C. SOURCE OF EVIDENCE

1. The facts set forth in this affidavit are based upon affiant's personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other

individuals including review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the individuals named herein have violated the statutes set forth above in paragraph A.

    D.   RELEVANT STATUTE

    1.   Conspiracy To Transfer Identification Documents Produced Without Lawful Authority, 18 U.S.C. §§ 1028 (a)(2) and (f), provides, in relevant part:

    (a)   Whoever, in a circumstance described in subsection (c) of this section-

    (2)   knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

shall be punished as provided in subsection (b) of this section.

    (d)   In this section and section 1028A --

    (1)   the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified;

2

   (3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, . . . ;

   (4) the term "false identification document" means a document made of a type intended or commonly accepted for the purposes of identification of individuals that –

    (A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental agency but was subsequently altered for purposes of deceit; and

    (B) appears to be issued by or under the authority of the United States Government, a State, . . . ;

   (6) the term "issuing authority" --

    (A) means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features;

   (7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including, any –

    (A) name, social security number, date of birth, official State or government issued driver's license or identification number . . .

   (9) the term "produce" includes alter, authenticate or assemble;

   (11) the term "State" includes any State of the United States, the District of Columbia, . . . ;

   (f) Attempt and conspiracy — Any person who attempts or conspires to commit any

offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

E. <u>FACTUAL BACKGROUND</u>

1. At all relevant times, Patricia Elizabeth Gonzalez (hereinafter referred to as "Gonzalez") was employed as a Legal Instrument Examiner with the District of Columbia Department of Motor Vehicles (hereinafter referred to as "DMV"). Her duties included processing customer transactions in all areas of DMV's operations, including processing applications submitted by individuals seeking to obtain District of Columbia driver's licenses and identification cards.

2. On May 21, 2007, Gonzalez was transferred to the Georgetown Service Center, which is inside the Georgetown Park Mall, located in the lower level of 3222 M Street, N.W.

3. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The DMV has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity (<u>i.e.</u> name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

4.     Applicants for driver's licenses must pass the following three tests: vision screening, knowledge and street sign recognition and skills road. Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test. Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

5.     On May 29, 2002, Gloria Gonzalez Paz (hereinafter referred to as "Paz") obtained a District of Columbia driver's license. The DMV employee who issued Paz's driver's license noted in the DMV computer system that Paz surrendered a Virginia driver's license #213330962. As a result of this entry, Paz was not required to take either the knowledge or road skills tests to obtain her D.C. driver's license. The Virginia Department of Motor Vehicles, however, never issued Paz a driver's license. On July 26, 2005, the DMV employee who issued this driver's license to Paz pled guilty in United States District Court for the District of Columbia to a one-count Indictment charging her with receipt of bribes by a public official, in violation of 18 U.S.C.§ 201(b)(2)(A) and (C). According to the Statement of Offense, this DMV employee admitted that in the early part of 2002 she began selling driver's licenses to a primarily Hispanic clientele. In order to process these driver's licenses, this DMV employee admitted that she input false information into the DMV computer system, including that individuals possessed valid out-of-state driver's licenses.

6.     On November 30, 2006, Gonzalez renewed Paz's D.C. driver's license even though Paz no longer resided in the District of Columbia. In addition, on October 29, 2007, and January 8, 2008, Gonzalez issued temporary tags to Paz for a 1994 Honda, listing the same

District of Columbia address that fraudulently appears on the driver's license Gonzalez previously issued to Paz.

    7.    On November 7, 2007, at approximately 3:30 p.m., Gonzalez issued a District of Columbia learner's permit to Paz's 15-year-old daughter (hereinafter referred to as "Juvenile"). District of Columbia learner's permits can only be issued to individuals 16 years of age or older. An application must be completed and proof of date of birth, social security number and D.C. residency is required. If an individual is 16 or 17 years old, a parental consent form must also be provided. Finally, the applicant must pass the vision and knowledge tests. Although Juvenile was born on August 6, 1992, and, therefore, was ineligible to obtain a learner's permit, Gonzalez falsely entered her birth date as August 6, 1991, into DMV's records. Gonzalez further falsified Juvenile's D.C. residency information by listing Paz's take-out food business, 3522 12th Street, N.E., as Juvenile's primary address. Finally, Gonzalez falsely certified in DMV's records that Juvenile passed the knowledge test.

    8.    On November 28, 2007, a Cooperating Witness (hereinafter referred to as "CW") telephonically contacted Paz to attempt to illegally purchase a District of Columbia driver's license. CW did so at the direction of the FBI. CW had no prior knowledge of Paz or Gonzalez and acted only at the direction of the FBI. During telephonic contact with Paz, CW was told by Paz that the cost of the license would be $1,600.00. On December 5, 2007, CW was again in telephonic contact with Paz. Paz told CW to find a legitimate social security number and memorize it without writing it down. Paz told CW that the girl at the DMV would process the transaction but if CW got caught, CW must tell people that CW does not know the girl at the DMV. Paz increased the cost of her services for fraudulently obtaining a D.C. driver's license

from $1,600.00 to $1,700.00. On December 6, 2007, CW was picked up by Paz and Paz's 15 year old daughter (hereinafter referred to as "Juvenile"), in Paz's Nissan minivan at the intersection of 14th Street N.W. and Columbia Road N.W. The meeting was electronically monitored by the FBI. Two other unidentified individuals who appeared to be of Hispanic descent were also in the minivan.

9. Paz told CW that a check for $39 was required for the girl inside the DMV to complete the transaction. CW told Paz that CW did not have a check to provide for the transaction. In compliance with Paz's request, CW gave Paz $39 in cash. In return, Paz gave CW a blank personal check drawn from a Bank of America account in the name of her husband, Mario Paz (hereinafter referred to as "Mario").

10. While in the van, CW gave Paz additional cash, fifteen $100 bills and four $50 bills, totaling $1,700. After arriving in the vicinity of the Georgetown DMV, juvenile escorted CW into the Georgetown Park Mall. Juvenile instructed CW to go to the clerk at station number 3 and pointed inside the DMV. At that time, Gonzalez was sitting in the station marked "3." While CW was waiting, Gonzalez left the DMV office. After Gonzalez returned to the DMV office, CW approached Gonzalez's window. Gonzalez did not ask CW to provide any of the required documentation regarding CW's name, date of birth or D.C. residency. CW was also not asked or directed to complete any of DMV's required tests for vision, knowledge or road skills. In addition, CW did not provide any proof of U.S. citizenship or legal resident alien status.

11. CW provided Gonzalez with a social security number that was given to CW by the FBI. CW read the social security number aloud to Gonzalez while holding a handwritten piece of paper that contained the information. CW then handed Gonzalez the blank Bank of

America personal check that Paz had given to CW while inside Paz's minivan. Gonzalez took possession of the check and filled out the check, listing DMV as the payee and the fee of $39.00. Gonzalez then endorsed the check by using a separate pen to forge Mario's signature.

12.   A review of Paz's telephone records confirm that Paz and Gonzalez have been in telephonic contact since at least March 2007.

13.   A review of the transaction for CW's license was performed by DMV authorities. The electronic data stored in the DMV computer system showed that the transaction was processed by Operator 1533. Operator 1533 is an electronic identifier that is unique to Gonzalez and not used by or assigned to any other DMV employee at any time. The transaction detail further showed that Gonzalez manually input an invalid Virginia driver's license number. The DMV computer system rejected this transaction. Gonzalez, who has manager access and has override authority, overrode the transaction. Gonzalez typed a comment in DMV's computer system for this transaction stating, "System Down," meaning that the Virginia driver's license number could not be verified due to a computer malfunction. CW did not provide any proof of a social security number or a Virginia driver's license. DMV authorities also discovered that the DMV has no physical record of CW's application on file even though it is standard operating procedure for all DMV clerks to maintain such documentation for the DMV files.

F.   CONCLUSION

Based on the foregoing, affiant respectfully submits that there is probable cause to believe that Gonzalez and Paz have engaged in the crimes set forth in Paragraph A, above. Wherefore, affiant respectfully requests that a complaint and a warrant be issued authorizing the arrests of Patricia Elizabeth Gonzalez and Gloria Gonzalez Paz for the above-stated violations of

Title 18, United States Code, Section 1028.

Based on the foregoing, affiant respectfully submits that there is probable cause to believe that Gonzalez and Paz have engaged in the crime set forth in Paragraph A, above. Wherefore, affiant respectfully requests that a complaint and a warrant be issued authorizing the arrests of Gonzalez and Paz for the above-stated violations of Title 18, United States Code, Sections 1028 (a) (2) and (f).

                                                SEAN T. RYAN
                                                FBI Special Agent

Subscribed and sworn to before

me this _____ day of January, 2008.

THE HONORABLE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA